```
               IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION


ALVIN PAUL,                       §
                                  §
     Plaintiff,                   §
                                  §
v.                                §    CIVIL ACTION NO. H-10-258
                                  §
FEDEX GROUND PACKAGE SYSTEMS,     §
INC., and JASON GONZALES,         §
                                  §
     Defendants.                  §
```

MEMORANDUM AND ORDER

Pending is Plaintiff Alvin Paul's Motion to Remand (Document No. 6). After carefully considering the motion, response, reply, and the applicable law, the Court concludes that the case should be remanded.

I. Background

Plaintiff Alvin Paul ("Plaintiff") was an independent contractor who delivered packages on three routes for FedEx Ground Package Systems, Inc. ("FedEx Ground") at its South Houston Terminal from 1989 until 2009. The relationship between Plaintiff and FedEx Ground was governed by the FedEx Ground Operating Agreement ("Operating Agreement").[1] The Operating Agreement recognized that Plaintiff had a proprietary interest in his

---

[1] Document No. 6, ex. A.

routes,[2] and that Plaintiff had the right to sell his routes to a "Replacement Contractor."[3]

On May 13, 2009, Jason Gonzales ("Gonzales"), the Pickup and Delivery Manager at the South Houston Terminal, and another manager named Don Easton, told Plaintiff that his Operating Agreement with FedEx Ground was terminated.[4]  Gonzales forbid Plaintiff from selling his routes to other drivers.[5]  Gonzales then awarded the routes to three contractor-drivers who were his friends: Sam Salinas, Frank Dehoyes, and Jose Calderon.[6]  Gonzales allegedly "encourag[ed] his supervisors to terminate [Plaintiff]" so that he

---

[2]   Therefore this Agreement contemplates the recognition both by the parties hereto and by the other contractors in the [FedEx Ground] system of a proprietary interest by [Plaintiff] in the customer accounts in his/her Primary Service Area as that area is configured from time to time, and a consequent right of [Plaintiff] to receive payment in the event his/her Primary Service Area is reconfigured with the result that customers previously served by [Plaintiff] are reassigned.

Document No. 6, ex. A at § 5.3 (Operating Agreement).

[3] Id., ex. A at § 18 (Operating Agreement); see also Sanders v. FedEx Ground Package System, Inc., 188 P.3d. 1200, 1204-06 (N.M. 2008) (discussing the contractual right of a contractor/driver for FedEx Ground to sell his delivery routes).

[4] Document No. 6, ex. C ¶ 8 (Paul Aff.).

[5] Id., ex. C ¶ 9 (Paul Aff.).

[6] Id., ex. C ¶ 10 (Paul Aff.), ex. D ¶¶ 4-8 (Belt Aff.).

could assign to his friends Plaintiff's routes in return for "under the table" payments.[7]

Plaintiff filed this action in the 334th Judicial District Court of Harris County, Texas, alleging that FedEx Ground breached the Operating Agreement and Gonzales tortiously interfered with Plaintiff's "proprietary interest in his routes."[8]  Defendants removed the case, asserting that this Court has diversity jurisdiction because Gonzales was fraudulently joined as a defendant.[9]  Plaintiff now moves to remand.

## II.   Motion to Remand

### A.   Improper Joinder Standard

To establish that a non-diverse defendant has been improperly joined, the removing party must prove (1) actual fraud in the pleading of jurisdictional facts, or (2) the plaintiff's inability to establish a cause of action against the non-diverse defendant. Ross v. Citifinancial, Inc., 344 F.3d 458, 461-62 (5th Cir. 2003). Here, Defendants do not assert that Plaintiff fraudulently pleaded jurisdictional facts, so only the second prong is at issue.  Under

---

[7] Document No. 1, ex. B-2 at ¶ 5.7 (Plaintiff's Original Petition); Document No. 6, ex. D ¶¶ 6-7.

[8] Document No. 1, ex. B-2 ¶ 5.

[9] Plaintiff and Gonzales are Texas citizens. FedEx Ground is incorporated in Delaware with its principal place of business in Pennsylvania. Document No. 1 at 3 & ex. B-2 ¶¶ 3.5-3.7.

this prong, Defendants must show there is no reasonable basis for predicting that state law might impose liability on the non-diverse defendant.  Id. at 462.  A reasonable basis for state liability requires that there be a *reasonable* possibility of recovery, not merely a *theoretical* one.  Id.  The Fifth Circuit has explained:

> [T]he standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6) because the court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim.

Campbell v. Stone Ins., Inc., 509 F.3d 665, 669 (5th Cir. 2007) (citing Ross, 344 F.3d at 462-63); *accord* Travis v. Irby, 326 F.3d 644, 648-49 (5th Cir. 2003).  Nonetheless, the party claiming fraudulent joinder bears a "heavy" burden of persuasion. Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 574 (5th Cir. 2004).  All contested issues of fact and any ambiguities in state law must be resolved in favor of remand.  Gasch v. Hartford Accident & Indem. Co., 491 F.3d 278, 281 (5th Cir. 2007) (citing Guillory v. PPG Indus., Inc., 434 F.3d 303, 308 (5th Cir. 2005)).

B.   Analysis

In his Motion to Remand, Plaintiff clarifies that his tortious interference claim "is based on Gonzales interfering with Plaintiff's *prospective contracts with other drivers* for the sale

of his three routes."[10]  The elements of tortious interference with a prospective contract or relationship are:

> (1) a reasonable probability that the plaintiff would have entered into the business relationship;
>
> (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring;
>
> (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur; and
>
> (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference.

Labor v. Warren, 268 S.W.3d 273, 278 (Tex. App.--Amarillo 2008, no pet.) (citing Baty v. ProTech Ins. Agency, 63 S.W.3d 841, 860 (Tex. App.--Houston [14th Dist.] 2001, pet. denied)).  Defendants assert that recovery against Gonzales is not possible for two reasons.

First, Defendants state that "despite Plaintiff's contention to the contrary, the actual cause of action he has stated against Mr. Gonzales is for tortious interference with the contract he had with FedEx Ground."[11]  When determining whether a defendant was fraudulently joined, a federal court cannot consider legal theories not alleged in the state court complaint.  See Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 263 (5th Cir. 1995) (refusing

---

[10] Document No. 6 at 6.

[11] Document No. 7 at 1-2.

to consider affidavits attached to a motion to remand to establish a legal theory that was not alleged in the state court complaint). Plaintiff's claim against Gonzales in his Original Complaint includes the following:

> Jason Gonzales interfered with [Plaintiff]'s proprietary interest in his routes by encouraging his supervisors to terminate [Plaintiff] in breach of the Contract with FedEx Ground/RPS and by causing [Plaintiff] to lose his routes. Mr. Gonzales clearly had an interest in having [Plaintiff] lose his routes so that he could then assign those routes to his friends which would inure to his personal benefit.[12]

The claim also incorporates by reference the factual allegations of the Original Petition, which provide that "contractors like [Plaintiff] sold their routes (in which they had built up a proprietary interest) to other existing drivers or new drivers. Local FedEx Ground management expressly and actively prohibited [Plaintiff] from selling his routes upon termination."[13]  While Plaintiff's cause of action against Gonzales is not a model of clarity, it sufficiently states that he is suing Gonzales for interfering with his prospective ability to sell his "proprietary interest" in his routes.

Second, Defendants alternatively assert that Plaintiff cannot establish a viable claim against Gonzales for tortious interference

---

[12] Document No. 1, ex. B-2 ¶ 5.7.

[13] Id., ex. B-2 ¶ 4.30-31.

with prospective contracts because Plaintiff cannot establish the first element--a reasonable probability that Plaintiff would have sold his routes.  Under Texas law, Plaintiff does not have to prove that the contract "would have certainly been made but for the interference," but that entering into a contract was "reasonably probable, considering all of the facts and circumstances attendant to the transaction."  <u>Richardson-Eagle, Inc. v. William M. Mercer, Inc.</u>, 213 S.W.3d 469, 476 (Tex. App.--Houston [1 Dist.] 2006) (citing <u>Hill v. Heritage Res., Inc.</u>, 964 S.W.2d 89, 126 (Tex. App.--El Paso 1997, pet. denied)).  Defendants argue that there was no reasonable probability that Plaintiff would sell his routes because:

> There is no allegation Plaintiff was preparing to sell his routes.  There is no allegation Plaintiff had taken any steps to advertise his routes or otherwise place them for sale.  There is no allegation that there were prospective purchasers of Plaintiff's routes.  There is no allegation Mr. Gonzales caused a third party to refuse to do business with Plaintiff.[14]

The parties have not cited any Texas cases directly on point, nor has the Court found any.  The decision from the Missouri Court of Appeals in <u>Weicht v. Suburban Newspapers of Greater St. Louis, Inc.</u> is instructive.  In <u>Weicht</u>, independent contractor-carriers who held delivery routes for a newspaper chain alleged that the

---

[14] Document No. 7 at 4.

newspaper chain interfered with their ability to sell those routes. The trial court dismissed the claim, finding:

> [Plaintiffs] have alleged here only that they own assets that have a market value, that they may wish to sell the assets at some time in the future, and that the actions of [Suburban Newspapers] have reduced or eliminated the market value of the assets. [Plaintiffs] have not alleged that they are currently attempting to sell their routes, that they have entered into negotiations with particular persons in regard to such a sale, or that they have contracts to sell routes. [Plaintiffs'] allegations do not set them apart from any other person owning an asset which such person may wish to sell at some point in the unspecified future to some unspecified purchaser.

No. 942-10087, 2000 WL 35754156 (Trial Order) (Mo. Cir. Jul 02, 2000). The Missouri Court of Appeals reversed, holding that under Missouri law the plaintiff stated a claim by alleging that (1) the newspaper chain was aware of and fostered the sale of routes, (2) there was an ongoing market for the routes, and (3) the newspaper chain destroyed the value of the routes and prevented them from being resold. 32 S.W.3d 592, 598 (Mo. App. E.D. 2000).

Similarly, Plaintiff has proffered evidence establishing that there was an ongoing market for FedEx Ground delivery routes,[15] Gonzales knew of and participated in the sale of routes,[16] and that Gonzales prevented Plaintiff from reselling his routes.[17] Moreover,

---

[15] Document No. 6, ex. B (FedEx Ground routes for sale on www.businessesforsale.com); id., ex. C ¶ 12.

[16] Id., ex. C ¶¶ 10-11, ex. D ¶¶ 4-7.

[17] Id., ex. C ¶ 9; *see also* id., ex. D ¶¶ 17-19.

that Plaintiff was not advertising his routes or negotiating to sell them before Gonzales's alleged tortious interference is not surprising. By terminating Plaintiff, Gonzales may have created the exigency that motivated Plaintiff to attempt to sell his routes. Of course, Plaintiff could not sell them because Gonzales simultaneously prevented him from doing so. Furthermore, the fact that it only took Gonzales "a few days" to assign Plaintiff's routes to other drivers at the South Houston Terminal in exchange for payment indicates that Plaintiff had a reasonable possibility of selling his routes, if he was given the chance.

Defendants have not asserted that Plaintiff's claim against Gonzales fails for any other reason. Resolving all facts and ambiguities in Texas law in favor of Plaintiff, the Court concludes that Defendants have failed to meet their burden to show that there is no reasonable basis for predicting that Gonzales would be liable for tortious interference with prospective contracts.

### III.  Order

Based on the foregoing, it is

ORDERED that Plaintiff Alvin Paul's Motion to Remand (Document No. 6) is GRANTED, and this case is REMANDED to the 334th Judicial District Court of Harris County, Texas.

The Clerk will mail a certified copy of this Order to the Clerk of the 334th Judicial District Court of Harris County, Texas,

as required by 28 U.S.C. § 1447, and shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 4th day of June, 2010.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE